12  111
29  240

## ROD NORTH *v.* THE STATE.

DEFENSE OF ANOTHER — CHARGE OF THE COURT.— On an indictment for assault with intent to murder one W., the appellant was convicted of aggravated assault. The proof showed that W. and a brother of the defendant engaged in a quarrel which immediately resulted in an exchange of shots between them. Appellant was present, but whether he shot at W. was controverted, and there was evidence tending to prove his theory that the first menace with fire-arms was made by W. against appellant's brother, and that the appellant, if he shot at W. at all, did so only to save his brother's life, and was not privy to the collision between his brother and W. *Held,* that in this state of the proof the defendant was entitled to have the jury instructed for acquittal in case they found the facts in accord with his theory.

APPEAL from the District Court of Tarrant. Tried below before the Hon. A. J. HOOD.

The indictment charged that the appellant, on July 17, 1881, made an assault upon E. E. Work, with intent to murder him. The conviction was for aggravated assault, and a fine of $100 the punishment assessed.

E. E. Work, testifying for the State, said that while he was riding in a certain field in June, 1881, he approached the bluff of a creek, and from there saw a man engaged in an act of bestiality with a mule. Witness turned and rode away. Soon afterwards the defendant, who was then unknown to witness, came to the latter's house and

said he wanted to know about a tale which was circulating in the country on witness's authority, to the effect that witness had seen him on a mule. Witness replied that he did not say it was the defendant he had seen, but, from what the neighbors said, it must have been the man who worked the field, and that man, as witness understood, was the defendant. Defendant replied that if any man said he would do such a thing, it was a d—d lie. Witness told him that was pretty hard to take, and that he, witness, did not want to accuse him if he was not the man. He replied that he could prove by certain men that he was not in the neighborhood at the time witness said he saw the transaction. Witness consented to meet the defendant the next day near the place in the field, and defendant said he would bring witnesses there to prove his innocence. Witness, accompanied by his son and stepson, went in a wagon to the place appointed, and after the defendant came the witness showed him the spot at which the man and mule were seen. Defendant and witness talked a while and then started towards the latter's wagon. On the way they were met by two men and witness asked defendant who they were. Defendant pointed to one of them and said that was Con, his only brother. Witness and defendant went on to the wagon, and after they got there Con North rode up and said to witness, "You saw the fellow at it, did you?" Witness replied, "I reckon so." Then Con North said, "Why didn't you whoop him up?"—meaning halloo at the man, as witness supposed. Con added that if he had seen such a thing he would have "whooped" the man up. Defendant, speaking to witness, said, "You ought not to have been so quick to censure a man, as such a report as that was liable to injure him." Con North said, "if any man was to circulate such a report as that on me or my brother, I would blow his d—d brains out." Witness replied, "if you have come here for a fuss say so," and

started from the head of his team to get into his wagon, and then Con North drew his pistol and fired as witness was about getting into the wagon. Witness reached for his shot-gun, which, with both barrels loaded, he had brought in the wagon. Then Con North fired again. The first shot struck witness in the stomach, and he thought the second one grazed his hand. At the first shot witness's mules jumped and started to run, and they were running as fast as they could when the second shot was fired. While they were running, witness fired back at Con North, and the latter fired two or three more times. After the second shot witness fell down in the bed of the wagon, and when it had got off about seventy-five yards, with the mules still running, he looked back and saw defendant shoot towards him.

On cross-examination the witness stated that no un-friendly talk passed between him and the defendant, and all he saw the defendant do was to shoot in his direction when he was about seventy-five yards off, and was lying down in his wagon, with the team running as hard as they could. The witness stated that Con North was dead.

John Work, son of the first witness, testifying for the State, gave substantially the same account as his father's of the affray. On cross-examination the defense elicited from him the fact that he did not go in the wagon to the place of the affray, but went to two different places to borrow a pistol, intending to take it to the place where his father and the defendant had agreed to meet. Witness said it was his own business what he wanted with it. He was at the wagon when his father and defendant came to it; they appeared to be talking friendly.

Jim Haley, who presumably was the stepson mentioned by E. E. Work, gave a similar version of the affray to that given by the preceding witnesses. He knew nothing of John Work's effort to borrow a pistol.

James Wallender, for the defense, gave a very different account of the collision from that of the witness for the State. He said that Work and the defendant were talking as in an ordinary conversation when they come came to the former's wagon. Con North rode up and, addressing Work, said, "You saw the fellow right at it, did you?" Work replied, "Yes." Then Con North said, "Why didn't you whoop him up and see who he was?" Work made no reply. Then the defendant said to Work, "Now you see you ought not to have been so quick to censure a man. Such a report as that will ruin a man, or do him a heap of hurt, if it gets out on him." Con North said that if any man should start such a report on him, he would blow his d—d brains out. Thereupon Work said, "If you have come here for a fuss, you can get it," and walked quickly to his wagon, got up in it, picked up and cocked his gun, and as he was raising it to his shoulder, pointing it towards Con North, the latter fired. Then Work shot at Con North, but the mules had started to run, and he missed him. Then Con North fired again and continued firing until he exhausted all his shots at Work, who was then lying down in the bed of the wagon. When Con North was about firing his last shots and the wagon was about a hundred yards distant, with the mules still running as hard as they could, the defendant drew his pistol and was about to present as if to shoot, when witness spoke to him and he put it back in his pocket. Witness examined defendant's pistol after the difficulty and found it loaded all around. Defendant never said an unkind word while the affray was going on, and did nothing but what witness had stated.

Defendant proved by two witnesses that he had maintained the reputation of a peaceable and law-abiding man.

The opinion discloses all other matters involved.

*Ball & McCart,* and *W. H. Pope,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WINKLER, J. The appellant was indicted for an assault with intent to murder one E. E. Work, and was on the trial acquitted of the charge of assault with intent to murder, but convicted of an aggravated assault, and a fine was imposed of $25. On the trial the court gave to the jury a somewhat lengthy charge as to what would constitute murder of both the first and of the second degrees, defining express and implied malice, and gave them the test by which should be determined the intent to commit murder, and also the law of manslaughter and aggravated assault, in a manner sufficiently appropriate under the evidence to enable the jury to apply the law to the evidence.

After the delivery of the general charge, counsel for the defendant requested certain instructions, which the court refused, and among them the following: "The jury are also instructed that if they believe from the testimony that Work was in the act of procuring a shot-gun to engage in a conflict with Con North before Con North had done any act showing a purpose to injure said Work, then you are instructed that Con North had the right to shoot, and Con North was not bound to wait until Work had made an effort to shoot; and if under these circumstances the defendant shot at Work (if you find he shot at all), you are instructed that he had the right to shoot." This refused instruction enunciates a correct principle of law, but states it too strong against the prosecution. It should have been given with this modification,— that, if the life of Con North was seriously endangered by the acts of Work, and the danger was imminent and pressing, in such case the defendant had the right to shoot in order to prevent the intended or threatened injury to Con North. *Foster* v. *State,* 8 Texas Ct. App. 248; *Guffee* v.

*State,* 8 Texas Ct. App. 187; *Kendall* v. *State,* 8 Texas Ct. App. 569; *Ross* v. *State,* 10 Texas Ct. App. 455.

A suitable instruction on this subject was rendered necessary as a part of the law of the case by the fact that it was shown in proof that Con North and the defendant were brothers; that the defendant and Work had met by appointment at the time and place of the difficulty, to have a certain investigation as to matters between them; which meeting had not resulted in anything of an unfriendly character, though they had been talking together for some time prior to the arrival of Con North; and that Work had a double-barreled shot-gun in the wagon in which he had ridden to the place. There was testimony tending also to show that after Con North arrived at the place of the difficulty, he began to converse upon the subject which the defendant and Work had met to discuss, and this resulted in a resort to and the use of firearms between Con and Work. Several shots were fired, Con North using a pistol, and Work a shot-gun. Agreeably to the testimony, there had been no unfriendly demonstrations between the defendant and Work until after the firing had commenced. Hence the necessity of a suitable instruction as to the right of the defendant, under the circumstances, to act for the prevention of the threatened danger to his brother.

In response to the argument on behalf of the State, it is deemed sufficient to say that the charge given was excepted to, and charges intended to supply an omission were requested by the defendant's counsel, and were refused by the court. Because of error in refusing, with proper modification, to give the requested instruction, the judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*